No. 34,275

E. S. Brown, *Appellee*, v. (L. D. Fisher et al., Defendants) The S. A. Long Company, Inc., *Appellant*.

(92 P. 2d 42)

Opinion filed July 8, 1939.

*Paul J. Wall, Carl I. Winsor, John E. Boyer, George J. Hondros,* all of Wichita, and *Rubert G. Martin,* of Lyons, for the appellant.

*Everett L. Baker* and *Frederick Woleslagel,* both of Lyons, for the appellee.

The opinion of the court was delivered by

Hoch, J.: Plaintiff brought an action for damages against several defendants alleging false representations in the sale of refrigerating equipment. Judgment was secured against one only of the defendants, the S. A. Long Company, and from that judgment the appeal here was taken.

E. S. Brown, plaintiff, a resident of Alden, Rice county, Kansas, entered into a contract in the spring of 1935 with L. D. Fisher, of Sterling, Kan., for the installation of certain cooling or refrigerating equipment in a building constructed by the plaintiff at Alden. Fisher was a dealer at Sterling who handled, among other merchandise, products of the Frigidaire division of the General Motors Sales Corporation. The plaintiff alleged that the equipment had not and would not perform the service required and as promised in representations made in connection with its sale to him. Brown brought the action on July 22, 1937, for damages, and joined as parties defendant Fisher, the S. A. Long Company of Wichita, distributors of Frigidaire products, the Frigidaire division of General Motors and the General Motors Acceptance Corporation to which the sales contract and obligation had been sold by Fisher. He asked for judg-

ment in the sum of $1,297.12 and for cancellation of the sales contract and indebtedness held by the General Motors Acceptance Corporation. He alleged that Fisher was the agent of the Long Company, that the Long Company was agent of the Frigidaire division, that the General Motors Acceptance Corporation was the agent of the Frigidaire division and that all of Fisher's acts and negotiations in connection with the sale of the equipment were for and on behalf of the Long Company and its principal, the Frigidaire division of General Motors and the General Motors Acceptance Corporation. Fisher demurred to the petition on the principal ground that under its allegations he was acting simply as an agent, and this demurrer was sustained. No service was made upon the Frigidaire division and that company ceased to be a party. Demurrers of the Long company and the General Motors Acceptance Corporation were overruled, and upon motion sustained by the court the plaintiff was required to elect whether in the action he was seeking damages for false representations of the seller or was asking for rescission of the contract. Plaintiff, having elected to stand on the ground of false representations and not on a prayer for rescission, the action was dismissed as against the General Motors Acceptance Corporation on the ground that no money judgment was sought against it. This left the Long company—hereinafter referred to as Long—as the only remaining defendant, and the case proceeded to trial before a jury. At the close of plaintiff's testimony the defendant demurred on the ground that the evidence established no cause of action against the defendant, that Fisher had not been shown to be the agent of the defendant and that under the allegations of the petition the defendant was the agent of the Frigidaire corporation, upon which no service had been attempted. The demurrer was overruled and defendant's testimony followed. The jury awarded damages in the sum of $500 "on equipment" and $500 "on business" and answered special questions to which reference will later be made. The defendant moved for judgment in its favor notwithstanding the verdict on the ground that the verdict was contrary to the evidence and was without foundation in fact or in law, and moved to set aside the verdict and for judgment in its favor on the ground that the answers to special questions were inconsistent with the evidence. Both motions were overruled as was the motion for new trial.

The action is not based on warranty but upon alleged false representations. It is not alleged that Brown dealt directly with Long in

the purchase of the equipment nor in negotiations leading up to the purchase. If Long is to be held liable it must be upon the theory that there were false representations made by Fisher as his agent. The principal question presented is whether there was any substantial evidence to connect Long as principal in the sale of the equipment by Fisher and whether the jury's answers to special questions relative to the alleged agency will stand up under the law and the evidence.

There is no question that in the preliminary negotiations and in the purchase of the equipment Brown's direct dealings were solely with Fisher. The written contract of purchase and sale were signed only by Brown and by Fisher. Nowhere in the contract is there any reference to Long. There was no correspondence between Long and Fisher prior to the sale and installation. Fisher was a local dealer who handled not only Frigidaire products but other merchandise, and part of the equipment used in the installation of Brown's plant was purchased from other companies. The written contract between Long and Fisher, under which Fisher was made an authorized dealer for handling certain Frigidaire products specifically provided that Fisher was not the agent and could not exercise any agency powers for Long. He was not even given exclusive right to handle refrigeration equipment such as that involved in this case within any local territory. This contract between Long and Fisher could not, of course, be binding as to Brown if by word or conduct Long led Brown to think that Fisher was acting as his agent. In a painstaking examination of the record we can find no evidence to support a finding that Fisher was acting as an agent of Long in the sale and installation of the equipment. The evidence is undisputed that Fisher bought the equipment outright from Long and paid for it, and when he sold it to Brown he was selling that which belonged solely to himself. It is true that Fisher consulted Long for engineering advice with reference to the equipment before making the sale. Brown says that Fisher represented that the equipment would produce a temperature of fifteen degrees in the freezing room and alleged that it failed from the beginning to produce that low a temperature. The undisputed testimony is that Long's recommendation of equipment made to Fisher was on the basis of a temperature of twenty degrees in the freezing room, and there was no testimony of any other recommendations or promises as between Long and Brown. Brown testified that in the spring of 1937, which was about two

years after the equipment was installed, a man visited his place who said he represented Long. He testified that he did not know the man's name and testified he had never seen him before or after that, that at that time he told this man that they had never been able to get a fifteen-degree temperature and the man replied, "I engineered that job and I am positive that it would only—it was only engineered for twenty degrees." He further testified that this man demanded payment on the equipment. He also testified that another man in the spring of 1937 was there at the plant with Fisher's son and was introduced as a Long representative, but stated that he did not discuss anything with him about the equipment or the installation. Perhaps the principal evidence relied upon by the appellee to connect Long as a principal in the transaction was the following letter from the Long Company, written two years after the installation:

"THE S. A. LONG ELECTRIC COMPANY,
Now the S. A. Long Company, Inc.
Distributor Frigidaire

WICHITA, KAN., June 29, 1937.

"*Mr. Earl S. Brown, Alden, Kansas:*

"DEAR SIR—In checking our data on the recommendations for your equipment at Alden, we find this job was engineered for 20° in the low temperature section and temperatures of around 40° in the high temperature section.

"After installation, this equipment was checked by different men from this office and it was found that temperatures as low as 14° were secured in the low temperature section and that the equipment worked very satisfactorily during the one-year warranty period.

"We find that afterwards this equipment was put to different use inasmuch as retail ice cream and retail ice were sold. Both these items were kept in the low temperature section, which would put an additional load on the compressor.

"Before making new recommendations for equipment, the present delinquent payments should be taken care of and we will then engineer any of your refrigeration requirements.     "Yours very truly,

"THE S. A. LONG COMPANY, INC.,
"FRANK RYAN, Service Manager."

Appellee stresses the last paragraph which stated that "the present delinquent payments should be taken care of." It will be noted, however, that the letter does not demand payment to Long, and the other evidence was that Fisher was the sole owner of the equipment when it was sold, that any payments yet due were due to him alone and there was no evidence that Long had any further financial interest in the matter. Long's explanation of the state-

ment in the letter was that as distributors of Frigidaire products they were interested in the welfare of local dealers and not interested in giving engineering advice to those who were delinquent in payments to their local dealers.

There was much conflict of testimony on the question of whether Brown had properly insulated a building which he constructed for installation of the equipment and whether an additional load had been put upon the equipment beyond that contemplated when the sale was made. Recital of this testimony would contribute nothing to the disposition of the case.

It is said by appellee that the fact of agency was determined by the jury in its answers to special questions. The questions and answers on that matter are as follows:

"1. Did the S. A. Long Company perform any act or acts appointing L. D. Fisher its agent? A. Yes.

"2. If your answer is 'yes' to the last above question, name all those acts. A. Allowing L. D. Fisher to sell their equipment and furnishing L. D. Fisher specifications for said equipment.

"3. Did the dealer's franchise between the S. A. Long Company and L. D. Fisher give Fisher the right or authority to act for or on behalf of the S. A. Long Company? A. Yes.

"4. Did the defendant practice any fraud upon the plaintiff? A. Yes.

"5. a. If so, when? A. When equipment was recommended to Brown.

"b. If so, what fraud? Misrepresentation."

It is noted that the jury found that the Long Company had appointed Fisher its agent by "Allowing L. D. Fisher to sell their equipment and furnishing L. D. Fisher specifications for said equipment." The mere sale by Fisher of equipment purchased from Long and the furnishing of specifications by Long to Fisher do not establish Fisher as the agent of Long in the sale and installation of the equipment. The jury's answer to question No. 3 was plainly contrary to the only evidence submitted as to the dealer's franchise between Long and Fisher. The written contract specifically denied to Fisher the right or authority to act for or on behalf of Long. The jury found in reply to questions 4 and 5 that Long practiced fraud upon Brown "When equipment was recommended to Brown." There was no testimony whatever that Long recommended the equipment to Brown. The only theory upon which such an answer could be supported is the theory that in making the sale and installation Fisher was acting as the agent of Long and, as already stated, there was no evidence to support that theory.

Appellant's demurrer to the evidence of the plaintiff should have been sustained and appellant's motion for judgment notwithstanding the verdict should have been sustained.

In view of the conclusions already stated other contentions of appellant and appellee need not be considered.

The judgment is reversed with instructions to render judgment for the defendant.